2004 ND 106

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Clare N. NORDAHL, Defendant and Appellant.**

**No. 20030269.**

Supreme Court of North Dakota.

June 3, 2004.

T.L. Secrest, State's Attorney, Hettinger, ND, for plaintiff and appellee.

William A. Herauf, Reichert & Herauf, P.C., Dickinson, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1]  Clare N. Nordahl appeals from a sentencing order dated August 7, 2003, which revoked the order deferring imposition of sentence on a Theft by Deception conviction and imposed sentence of one year.  We affirm.

## I.

[¶ 2] During spring 2001, Nordahl traveled to Montana to pre-sell hay, which was to be produced the following summer for area farmers. Nordahl secured contracts with at least 12 Montana farmers who paid for hay in advance in order to receive a discounted rate. At the time he entered into the contracts, Nordahl presumed he would be able to produce a large amount of hay based on the potential availability of additional land. The anticipated additional land was not made available for Nordahl, which dramatically decreased hay available to fulfill the Montana contracts. Nordahl's hay production was further diminished by poor weather conditions. At the end of the summer, Nordahl did not produce enough hay to fulfill the contracts for which he had already accepted payment.

[¶ 3] Several of the Montana farmers eventually contacted the State's Attorney and Nordahl was charged with Theft of Property by Deception. On December 26, 2002, Nordahl entered into a plea agreement, which reduced the charge from a class B felony to a class A misdemeanor. The agreement stated Nordahl would pay restitution in the amount of $107,897.15 to the 12 victims who came forward. The district court ordered deferred imposition of sentence for two years subject to various conditions. The operative condition in the plea agreement for this appeal was that Nordahl make restitution by March 15, 2003. Nordahl agreed to the conditions in the plea agreement, including the amount of the restitution.

[¶ 4] In an effort to satisfy the restitution by the required date, Nordahl began selling assets. Nordahl owned a school bus he used to drive a local school bus route. However, Nordahl had used the bus as collateral in order to obtain loans which were also secured by mortgages on land. Nordahl negotiated a sale of the bus, for which he was able to collect $26,000 in December 2002. The lending bank demanded the proceeds of the bus sale be applied to the loans, which were secured by farmland as well as the bus. Nordahl was unable to use the proceeds of the bus sale to partially satisfy the restitution agreement.

[¶ 5] Nordahl then attempted to sell part of his farm in order to satisfy the restitution obligation. However, due to outstanding debts at the bank, Nordahl was unable to sell the farm. The farm went into foreclosure. Other assets owned by Nordahl, such as farm equipment, were also lost in foreclosure proceedings.

[¶ 6] Eventually, Dakota Hay took over Nordahl's hay operation and Nordahl worked for the company with 7.5% to 15% of the gross sales being applied to reducing Nordahl's restitution obligation.

[¶ 7] On August 7, 2003, the district court heard arguments on the State's petition to revoke probation based upon failure to make restitution. Nordahl attempted to explain why he was deficient in his payment of the restitution obligation. The district court determined Nordahl had violated his plea agreement, which required Nordahl to make restitution by March 15, 2003. The court revoked probation and imposed sentence. Nordahl was sentenced to serve one year in addition to paying restitution.

[¶ 8] On August 11, 2003, Nordahl filed a motion for stay of execution, a motion for reconsideration, and a motion for sentence to start at a later date. On August 12, 2003, the district court granted Nordahl's motion for sentence to start at a later date and ordered Nordahl to begin serving his sentence on September 15, 2003. Initially, the district court denied Nordahl's request for stay of execution of his sentence; however, the district court granted the request for a stay pending appeal to this Court on

October 15, 2003. Nordahl has not further addressed his appeal of the original order denying a stay and we deem that issue as abandoned.

[¶ 9] Nordahl filed this appeal.

## II.

[¶ 10] Nordahl raised one issue on appeal. Nordahl asks, "[c]an probation (deferred imposition of sentence) be revoked and the defendant sent to jail solely because the defendant, through no fault of his own, was unable to make the restitution payments?" Nordahl argues the district court abused its discretion when it revoked the deferred imposition of sentence and imposed sentence on Nordahl in which he was required to serve one year in jail because he failed to pay restitution by the date specified in his plea agreement.

[¶ 11] This Court reviews probation revocation proceedings under a two-step analysis. *State v. Clark*, 2001 ND 194, ¶ 7, 636 N.W.2d 660. First, this Court determines whether the district court's factual findings were clearly erroneous. *Id.* "A finding of fact is clearly erroneous if, although there is some evidence to support the finding, we are convinced, on the entire record, a definite mistake has been made." *State v. Gates*, 540 N.W.2d 134, 137 (N.D.1995). Second, we determine whether the district court's decision to revoke or modify probation was an abuse of discretion. *Id.* A district court "abuses its discretion when it acts in an arbitrary, unreasonable, or capricious manner, or misinterprets or misapplies the law." *Clark*, at ¶ 8 (quoting *State v. Sisson*, 1997 ND 158, ¶ 7, 567 N.W.2d 839).

[¶ 12] Nordahl concedes the district court's finding that he violated the conditions of the plea agreement was not clearly erroneous, because Nordahl admits he did not pay the amount required. Nordahl contends the district court abused its discre-

tion when it determined imposition of sentence was appropriate because Nordahl failed to comply with the terms of the plea agreement. Nordahl argues he made a good faith effort to make payment of the restitution obligation, but was unable to do so.

[¶ 13] When restitution is imposed by the district court as part of a defendant's sentence, the district court must proceed with a restitution hearing pursuant to statute. N.D.C.C. § 12.1–32–08(1). The statute requires the court to consider "[t]he ability of the defendant . . . to pay monetary reparations." N.D.C.C. § 12.1–32–08(1)(b). If a defendant agrees to restitution as part of a plea agreement, he is not entitled to a hearing to determine whether he has the ability to pay restitution. *State v. Thorstad*, 261 N.W.2d 899, 901 (N.D.1978). Nordahl agreed to pay restitution as a part of his plea agreement, which specifically set out the amount to be paid and the time in which to make payment. The district court was not required to make a finding that the defendant was financially able to comply with the restitution requirement under the rule established in *Thorstad*. *Id.*

[¶ 14] In *Thorstad*, this Court held restitution hearings under N.D.C.C. § 12.1–32–08 were necessary when the defendant pleaded guilty or was found guilty and the amount of restitution was in dispute or uncertain. *Id.* at 901. However, the Court held, "we do not believe it applies where restitution or reparation was resolved by agreement with the defendant through plea-bargaining procedures even though the specific amount is not known and is to be determined later." *Id.*

[¶ 15] In *Thorstad*, the defendant reached a voluntary plea agreement that included a deferred imposition of sentence and restitution. Thorstad's probation was

later revoked, and the district court sentenced him to a term of confinement and restitution. Thorstad argued restitution was impermissible because there was no hearing held under N.D.C.C. § 12.1–32–08. The Court held that even under a deferred imposition situation, the district court could impose restitution without a hearing when the defendant previously agreed to the amount under a plea agreement. *Id.* at 903. The Court stated, "12.1–32–08 does not apply in those instances where the restitution or reparation is the result of a plea-bargaining agreement between the State and the defendant." *Id.*

[¶ 16] The district court explained in its opinion and order dated September 10, 2003, that Nordahl's voluntary entrance into the plea agreement waived his right to a restitution hearing under N.D.C.C. § 12.1–32–08. The district court stated, "[t]he defendant through his arguments wishes the Court to consider his ability to pay and in effect to conduct a restitution hearing under N.D.C.C. § 12.1–32–08. The defendant waived his right to such a hearing by voluntarily agreeing to pay restitution as a part of the Plea Agreement."

[¶ 17] After Nordahl agreed to pay restitution as a part of the plea agreement, he began making efforts to pay. These efforts failed and the district court determined revocation of Nordahl's deferred imposition of sentence was appropriate. Nordahl argues his inability to pay restitution was through no fault of his own; therefore, the district court could not revoke his probation without an inquiry as to the reason for his failure to pay restitution and without investigating other alternatives. We disagree.

[¶ 18] Nordahl relies on *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), to argue a hearing was required to determine if he was financially capable of fulfilling the restitution require-ment included in the plea agreement. In *Bearden,* the Supreme Court decided the issue of whether a court can revoke a defendant's probation for failure to pay restitution without evidence and findings the defendant was responsible for the failure or that alternative forms of punishment were inadequate. *Id.* at 665, 103 S.Ct. 2064. In *Bearden,* the defendant pleaded guilty to burglary and receiving stolen property. Bearden's sentence, imposed by the court, required him to pay $550 in restitution. Bearden was able to partially satisfy the restitution obligation, but thereafter lost his job and was unable to find a new job despite continuing efforts. When Bearden was unable to satisfy the remainder of the restitution, the trial court revoked Bearden's probation and sentenced him to the remainder of his probationary period to be served in prison.

[¶ 19] Prior to Bearden's revocation proceeding, Bearden contacted his probation officer and explained he would be unable to make the required restitution payments within the allotted time frame because he had lost his job. Bearden had a ninth-grade education and was unable to read, which diminished his ability to find adequate employment.

[¶ 20] Nordahl's situation is sufficiently distinguishable from the *Bearden* case. In *Bearden,* the defendant did not agree to the restitution as part of a plea agreement; rather, restitution was imposed by the court as a part of Bearden's sentence. *Id.* at 662, 103 S.Ct. 2064. In this case, Nordahl agreed to the restitution amount and agreed to the due date in a plea agreement.

[¶ 21] In a factually similar case, the court of military justice held when a defendant enters into a plea agreement to pay restitution, he is representing to the court he has adequate assets to satisfy the judgment. *United States v. Mitchell,* 51 M.J.

490, 494 (1999). The *Mitchell* court distinguished the rule in *Bearden* based on the presence of a plea agreement entered into freely by both sides. *Id.* Judge Gierke reasoned, "a probationer who cannot comply with a pretrial agreement through his own fault [should] not be permitted to use indigency to excuse his failure to comply with the agreement." *Id.*

[¶ 22] The crux of the decision in *Bearden* rested on good faith. *Id.* Unlike *Bearden*, but similar to the defendant in *Mitchell*, Nordahl knew his financial situation before he entered into the plea agreement with the State's Attorney. Nordahl was in a position to know the nature and extent of his finances and to evaluate his ability to pay the restitution obligation. Prior to entering the plea agreement, Nordahl knew of the encumbrances on his farm and other property. In his affidavit, Nordahl stated it was his intention to sell the bus to satisfy a portion of the restitution and to sell part of his farm property to satisfy the rest of the obligation. Presumably, Nordahl was aware that the outstanding obligations to the bank would go unfulfilled if he paid the restitution obligation in full or, in the alternative, the bank would lose its collateral.

[¶ 23] The decision in *Mitchell* suggests prior knowledge of inability to pay negates the good faith efforts present in the *Bearden* ruling. *Mitchell*, at 494. The court in *Mitchell* explained:

We hold that the Due Process Clause does not protect an accused who offers to make full restitution, knowing full well that he cannot; nor does it protect an accused who fails to take timely and reasonable steps to safeguard his assets so that he can make restitution as promised. Based on the record before him, the convening authority was justified in concluding that appellant either bargained in bad faith by misrepresenting his net worth, or he failed to take reasonable steps to safeguard his assets and convert them to cash after he was convicted and sentenced. The record reflects that appellant either made a bargain that he knew he could not keep, or he allowed his assets to be dissipated instead of taking prompt and reasonable measures to secure them.

*Mitchell*, at 494.

[¶ 24] Nordahl is presumed to have had knowledge of his assets and obligations at the time he entered into the plea agreement. Nordahl entered into security agreements in order to secure financing. Nordahl knew or should have known the encumbrances on his assets could frustrate his ability to liquidate and fulfill the restitution obligation. In his affidavit, Nordahl states he was unaware that the bus was cross-collateralized in a loan against his farm property. However, Nordahl was aware of the other loans against his farm property and machinery, indicating he knew he did not have sufficient assets to pay the full restitution to the victims.

[¶ 25] In *United States v. Foust*, the court of military review articulated the distinction between restitution in a plea agreement and restitution imposed through sentencing:

To allow an accused to offer an agreement with a sentence limitation based on restitution being made and then allow him to take advantage of this limitation when restitution is not made is a windfall this court will not permit. Although the Supreme Court has disallowed confinement or an increase in confinement when restitution was not made, those cases are distinguishable from the case before us. Those cases dealt with restitution and increased confinement as part of the adjudged sentence, something

over which the defendants had no control.

25 M.J. 647, 649 (1987) (citing *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971)).

[¶ 26]   In this case, Nordahl had control over the plea agreement and its contents. The severity of Nordahl's offense was lessened from a felony to a misdemeanor based on his agreement to quickly repay the victims.   Nordahl's reliance on the *Bearden* case is misplaced because allowing a defendant to avoid restitution by subsequently pleading indigency after entering into a valid plea agreement would cause a windfall to the defendant as characterized by the *Foust* court.

[¶ 27]   In the revocation proceeding, the district court explained its reason for imposing the one-year sentence and restitution obligation.   The district court emphasized the contractual nature of a plea agreement.   The district court stated:

> Based on the admission the defendant has failed to make restitution, the Court does find that he has violated the Court's Order.   The difficult question is how to proceed.   What seems important to the Court here is that there was a plea agreement in place.   The charges were substantially reduced from a felony to a class A misdemeanor as part of that agreement.   Under the agreement, the defendant promised the State that by March 1st he would make restitution.   He's failed to do that.   Case law says that when a defendant agrees to pay restitution in a plea agreement, a sentencing court orders restitution by virtue of the agreement and not the restitution statute.   The significance of that is that it would weigh more heavily with the Court if Mr. Nordahl had been ordered by the Court to pay restitution,

then I would be more concerned with his ability to pay and the circumstances that have prevented him from paying.   The fact is, he made a promise as part of his plea agreement that he would pay.   He's violated that agreement.   There may be circumstances that justify that.   But, for whatever reason, he's violated that agreement and therefore he is in violation of the Court Order.   I agree with Mr. Secrest, this is in criminal court.   The consequence of violating the Court's Order is that the Court will revoke his sentence and impose a new sentence.

> Being familiar with the case, I agree that the appropriate sentence is one year incarceration at the Adams County Jail.   The other terms and conditions of the sentence would be that the restitution obligation would remain.   Obviously, if there is an ability to pay restitution the Court might reexamine and consider a Rule 35 reduction in the sentence, but I am imposing one year commencing immediately.   Further condition of the sentence is that defendant pay restitution, and that would be according to the previous order, obviously, when he's able to pay it.   I would say within one year's time that he pay the restitution as ordered.   A new criminal judgment will be entered accordingly.

[¶ 28]   We affirm the order revoking Nordahl's deferred imposition of sentence and imposing sentence of one year.

[¶ 29] DALE V. SANDSTROM, WILLIAM A. NEUMANN, and MARY MUEHLEN MARING, JJ., concur.

I concur in the result GERALD W. VANDE WALLE, C.J.